DAVID C. PARISI - SBN 162248
dcparisi@parisihavens.com
SUZANNE HAVENS BECKMAN – SBN 188814
shavens@parisihavens.com
PARISI & HAVENS, LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
Telephone: (818) 990-1299

JAY EDELSON
jedelson@edelson.com
MICHAEL J. ASCHENBRENER
maschenbrener@edelson.com
BENJAMIN H. RICHMAN
brichman@edelson.com
EDELSON MCGUIRE, LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Fax: (312) 589-6378

*Attorneys for Plaintiff Jason Standiford*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| JASON STANDIFORD, an individual, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PALM, INC., a Delaware corporation, and SPRINT SPECTRUM L.P., a Delaware limited partnership, and DOES 1 – 50, inclusive,<br><br>Defendants. | Case No. 09-cv-05719-LHK<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>**(1) Stored Communications Act, 18 U.S.C. § 2701;**<br>**(2) Breach of Contract;**<br>**(3) Negligence;**<br>**(4) California Consumer Legal Remedies Act;**<br>**(5) Violation of Cal. Bus. & Prof. Code § 17200; and,**<br>**(6) Violation of Cal. Bus. & Prof. Code § 17500.**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff, by his attorneys, upon personal knowledge as to himself and his own acts and upon information and belief as to all other matters, alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff, Jason Standiford, brings this First Amended Class Action Complaint (the "Complaint") against Defendants Palm, Inc. ("Palm"), headquartered in Sunnyvale, California, Sprint Spectrum L.P. ("Sprint"), headquartered in Reston, Virginia, and DOES 1 through 50 (collectively referred to as "Defendants") seeking relief for the loss of personal data suffered by himself and other users of Palm webOS-based wireless phone devices, including the Palm Pre and Palm Pixi.

2.      Several hundred thousand webOS devices have been sold by Palm and Sprint to consumers nationwide since the release of the first webOS device, the Palm Pre, on June 6, 2009.  The Pre was the first mobile device developed for use with Palm's webOS mobile operating system, which was said to be "groundbreaking" and would allow consumers a new ease of use never before seen in a mobile computing device.

3.      One of the significant differences between webOS devices and other mobile devices is the heavy reliance of webOS on synchronization with contacts, calendars, and other information stored via the Internet using services like Google's Gmail e-mail. Likewise, rather than allowing webOS users to back up data stored directly on their devices to their personal computers, webOS devices are designed to sync with and backup virtually all data directly to Palm's own servers every 24 hours.

4.      According to Palm and Sprint, the Palm backup systems allow webOS users to back up and restore data lost or destroyed onto either an existing or new webOS-based device.  Backup services are especially important for webOS users because Palm and Sprint do not provide software or applications that allow users to transfer most forms of data from webOS devices to a personal computer.

5.     Despite the confidence Palm and Sprint have placed in their backup systems and Palm's servers, numerous webOS users have suffered catastrophic data loss as a result of failed backups or overwriting of previously stored data.

**PARTIES**

6.     Plaintiff Jason Standiford is a resident of San Francisco, California.  At all relevant times, Standiford maintained an account with Sprint through which he used a Palm webOS wireless device.  Standiford initially suffered complete and catastrophic loss of nearly all data on his Palm Pre.

7.     Palm, Inc. is a provider of mobile computing and communication technologies that designs, develops, manufactures, markets, and sells a broad range of products, including smartphones and handheld computers.  Palm has recently been acquired by HP.  Palm is a Delaware corporation headquartered at 950 West Maude Avenue, Sunnyvale, California 94085.  Palm does business throughout the State of California and the nation.

8.     Defendant Sprint Spectrum L.P. is a leading provider of cellular phone and data service in the United States.  It is a Delaware limited partnership headquartered at 6160 Sprint Parkway, Shawnee Mission, Kansas 66251.  Sprint does business throughout the State of California and the nation.

9.     Plaintiff is currently ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of the defendants sued herein under the fictitious names Does 1 through 50, inclusive, and therefore, sues such defendants by such fictitious names.  Plaintiff will seek leave to amend this Complaint to allege the true names and capacities of said fictitiously named defendants when their true names and capacities have been ascertained.  Plaintiff is informed and believes and based thereon alleges that each of the fictitiously named Doe defendants is legally responsible in some manner for the events and occurrences alleged herein, and for the damages suffered by Plaintiff.

10.     Plaintiff is informed and believes and based thereon alleges that all defendants, including the fictitious Doe defendants, were at all relevant times acting as actual agents, conspirators, ostensible agents, partners and/or joint venturers and employees of all other defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, and joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of their co-defendants; however, each of these allegations are deemed alternative theories whenever not doing so would result in a contraction with the other allegations.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d), because (a) at least one member of the putative class is a citizen of a state different from Defendants, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action.

12.     Personal jurisdiction and Venue are proper because Palm, Inc. is a corporation headquartered in Santa Clara County and/or because the improper conduct alleged in this Complaint occurred in, was directed from, and/or emanated or exported from California.

## INTRADISTRICT ASSIGNMENT

13.     Pursuant to Civil Local Rule 3-2(e), this case shall be assigned to the San Jose Division as it arises from Santa Clara County.

## FACTS

**The Palm webOS Platform**

14.     On June 6, 2009, Palm began selling the Palm Pre wireless device through Sprint stores and other retail locations.  Industry estimates show between 50,000 and 100,000 Pre units sold in the first week of sales alone, with several hundreds of thousands more sold to date.

15.     The Palm Pre was the first mobile device released to use Palm's webOS operating system.

16.     Sprint was initially the exclusive carrier for the Palm Pre and its sister device—the webOS-based Palm Pixi—in the United States, much in the same way that AT&T is the exclusive carrier for the Apple iPhone.  The Palm Pre Plus and Palm Pixi Plus are now available on both Verizon Wireless and AT&T's wireless networks.

17.     The Pre and other webOS devices are relatively unique among mobile phones in that they rely almost exclusively on Palm's back-end servers to backup and restore most data inputted to the device.  This means that Palm stores webOS users' address book contacts, calendar entries, memos, credentials for e-mails, photos, and text messages, and other data on its servers.  Palm calls this "Palm Services."

18.     Upon activating a webOS-based device, Palm requires users to create a "Palm Profile," which is a user-specific account (not device-specific) that allows users access to Palm Services functions like automatic software updates and data backup services.  The Palm Profile is designed to allow users to access their devices settings and previously stored data at all times from any webOS-based device.

19.     The Palm backup and restoration service is an example of so-called "cloud computing," whereby users store information not on their own computers or devices, but on technology providers' massive servers via the Internet.  Other examples of cloud computing include Facebook and Google's Gmail e-mail service.

20.     Sprint and Palm have touted this mode of operation as a benefit to consumers because it means that Palm servers can simply send user data to a new webOS-based device should an existing device be lost or destroyed.  This service has proven especially important in light of the seemingly high number of hardware defects and other problems many Pre users have encountered.

21.     While wireless carriers like Sprint are the primary providers of wireless service and the Internet connections necessary for the webOS devices to function with Palm's servers, it is Palm that actually stores all user data and is responsible for its safe-keeping.

**webOS Data Loss—Backup and Retention Procedures**

22.     Upon purchasing a Palm Pre or other webOS device, users are required to create a "Palm Profile" in order to access and utilize functions like automatic software updates and Palm's backup and restoration services.  By logging in using an e-mail address and password associated with their Profiles, webOS users can access account settings and data backups on any webOS device.

23.     Upon creation of a Palm Profile, Palm's backup service begins to operate.

24.     The backup service is designed to automatically backup each webOS user's data every 24 hours.  In order to do so, the service pulls data from the webOS device via the Internet and stores it on Palm's servers.

25.     Each 24-hour period a new backup cycle begins.  As part of this process, Palm overwrites previous backups on a daily basis.  Once a new backup is completed, all information from previous backups becomes irretrievable.

26.     Neither Palm nor Sprint maintains secondary backup systems through which daily data backups are stored.

27.     The result of this system is that many webOS device users suffered and continue to suffer significant and permanent data loss, including but not limited to the loss of instant messages, e-mails, contacts in their address books, and applications paid for and downloaded from the Palm App Catalog.

28.     webOS users frequently experience this data loss when switching from one webOS device to another, often as part of a warranty exchange.

29.     Further complicating webOS users' data loss is the fact that unlike iPhones, BlackBerrys and other smartphones, Palm's current webOS-based devices are not designed to sync locally with a user's personal computer without additional software and hardware.  In fact, Palm and Sprint suggest that if a user wishes to back up data locally on their personal computer, they should purchase software or applications from third-party developers.  This means that most users are not able to backup their data locally, but are encouraged and required to rely on Palm.

30.     Additionally, Sprint stores are not able to retrieve locally stored data from webOS devices.  This means that Sprint is not able to transfer information from one webOS device to another for its customers.

### FACTS RELATING TO PLAINTIFF

31.     At all relevant times, Standiford maintained an account with Sprint for wireless telephone service and owned and used a Palm Pre device.

32.     On or about November 13, 2009, Standiford went to his local Sprint store to complete a warranty exchange for his Palm Pre after the power button on that device failed to function properly.  This was the fourth time he had to exchange his Pre because of defects.

33.     While at the Sprint store, representatives completed the warranty exchange, meaning that Standiford exchanged his existing, malfunctioning Pre for a new or refurbished Pre.

34.     After leaving the store, Standiford logged into his Palm Profile in order to load his existing, Palm-stored, cloud-based Profile to his new Pre.  In theory, his new Pre should have then contained data identical to his previous Pre, including contacts, calendar entries, memos, and more.

35.     Upon logging into his Palm Profile, Standiford discovered that the Profile only contained four of the hundreds of contacts he had stored and that were available on his previous Pre.  Of those four contacts now in his Profile, two were for Sprint customer service

and the other two were contacts very recently stored.  His Profile also contained only three of his many memos he had written and stored, and none of his bookmarks.  All in all, Palm lost almost all of Standiford's data that it promised to back up and store for him.

36.     Standiford then went back to the Sprint store on or about the following day, November 14, 2009.  He did so because he believed the store was still in possession of his previous Pre device, which he also believed should still have his data stored on it.

37.     Standiford was correct—Sprint still had the phone and the phone still contained all of his data.

38.     A Sprint representative attempted unsuccessfully to retrieve Standiford's data from his previous Pre, and in the process permanently deleted all of the data stored on the device.  The result was that Sprint deleted the only backup of Standiford's data.

39.     On or about December 3, 2009, a representative from Palm contacted Standiford and stated that Palm found a data file and wanted Standiford to erase the data currently on his phone.  After doing so, Standiford recovered some, but not all of the lost data.

40.     When purchasing the Palm Pre, Plaintiff specifically relied on the representations made by Sprint and Palm that the Palm system would backup his data for him, and that if his phone became lost or was damaged, Sprint and Palm would restore all of that data to a new or existing device.

## CLASS ALLEGATIONS

41.     Plaintiff Standiford brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and Fed. R. Civ. P. 23(b)(3) on behalf of himself and the following classes:

a.  **The webOS Class.**  All persons and entities in the United States who (1) created Palm Profiles for use with Palm Services and their Palm webOS-based mobile phones and (2) stored data on Palm's servers via Palm Services.

b. **The webOS Data Loss Subclass.**  All persons and entities in the United States who (1) created Palm Profiles for use with Palm Services and their Palm webOS-based mobile phones, (2) stored data on Palm's servers via Palm Services, and (3) suffered permanent data loss.

Excluded from the Classes are Defendants, their legal representatives, assigns, and successors, and any entity in which Defendants have a controlling interest.  Also excluded is any judge to whom this case is assigned and those judge's immediate families.

42.     Plaintiff reserves the right to revise these definitions based on facts learned in discovery.

43.     **Numerosity.**  The Classes consist of thousands of individuals and entities, making joinder impractical.  Upon information and belief, Class members can be identified through Defendants' records.

44.     **Typicality.**  Plaintiff's claims are typical of the claims of all of the other members of the Classes, as Plaintiff and the members of the Classes were all subjected to Defendants' identical wrongful conduct based upon transactions that occurred uniformly with Plaintiff and the public.

45.     **Adequacy.**  Plaintiff will fairly and adequately represent and protect the interests of the other members of the Classes.  Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions.  Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so.  Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Classes.

46.     **Superiority.**  Absent a class action, most members of the Classes would find the cost of litigating their claims to be prohibitive and will have no effective remedy.  The class treatment of common questions of law and fact is also superior to multiple individual

actions or piecemeal litigation in that it would conserve the resources of the courts and the litigants, and promote consistency and efficiency of adjudication.

47.     Defendants have acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Classes, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes.

48.     The factual and legal bases of Defendants' liability to Plaintiff and to the other members of the Classes are the same, resulting in injury to Plaintiff and the Classes.  Plaintiff and the other members of the Classes have all suffered harm and damages as a result of Defendants' wrongful conduct.

49.     **Commonality.**  There are many questions of law and fact common to Plaintiff's claims and the claims of the other members of the Classes.  Those questions predominate over any questions that may affect individual members of the Classes.  Common questions for the Classes include but are not limited to the following:

(a)     whether Defendants' conduct described herein violates the Stored Communications Act, 18 U.S.C. §§ 2701, *et seq.*;

(b)     whether Defendants' conduct described herein constitutes breach of contract;

(c)     whether Defendants' conduct described herein constitutes negligence;

(d)     whether Defendants' conduct described herein violates California's Consumer Legal Remedies Act;

(e)     whether Defendants' conduct described herein violates Cal. Bus. & Prof. Code §§ 17200, *et seq.*;

(f)     whether Defendants' conduct described herein violates Cal. Bus. & Prof. Code §§ 17500, *et seq.*;

(g)     whether Defendants misrepresented to users that Palm webOS-based mobile phones utilized a secure automatic data backup system;

(h)     whether Defendants concealed and did not disclose that they did not invest the resources, including hardware, software, procedures, maintenance, security, backup procedures, and the training and testing necessary to ensure that their data backup and restoration functions operated to achieve the guarantees and promises Defendants made to users of their products and services;

50.     Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the Class members.  Similar or identical statutory and common law violations, business practices, and injuries are involved.  Individual questions, if any, pale by comparison to the numerous common questions.

51.     The injuries sustained by the members of the Classes flow, in each instance, from a common nucleus of operative facts.  In each case, Defendants represented that Palm webOS-based mobile phone users always had access to their personal data, and that such data would and could be properly entrusted to Defendants to maintain and retain, safely, securely and always available, no matter what might happen to the individual phone the user utilized to access that data.  What Defendants did not disclose to Plaintiff and the other members of the Classes was that Defendants did not invest the resources, including hardware, software, procedures, maintenance, security, back up procedures, and the training and testing necessary to ensure that their data backup and restoration functions operated to achieve the guarantees and promises Defendants made to users of their products and services.  Defendants saved money by not investing these necessary resources to support their promises and guarantees made to users of their products and services.

52.     Individual litigation of the legal and factual issues raised by Defendants would increase delay and expense to all parties and to the judiciary.  The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale and comprehensive supervision by a single court.

53.     Given the similarities of the claims of the members of the Classes and the absence of material differences in the state statutes and common laws upon which those claims are based, a nationwide class will be easily managed by the Court and the parties.

54.     In the alternative, the Classes may be certified because:

(a)     the prosecution of separate actions by the individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual class members and would establish incompatible standards of conduct by Defendants;

(b)     the prosecution of separate actions by individual members of the Classes would create a risk of adjudications that would, as a practical matter, be dispositive of the interests of other members of the Classes who were not parties to those adjudications, or substantially impair or impede their ability to protect their own interests; and

(c)     Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final and injunctive relief with respect to the Classes as a whole.

# FIRST CAUSE OF ACTION

## Violation of the federal Stored Communications Act, 18 U.S.C. § 2702

### (On behalf of Plaintiff and both Classes against all Defendants)

55.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

56.     The Stored Communications Act ("SCA") contains provisions that provide consumers with redress if a company mishandles their electronically stored information. The SCA was designed, in relevant part, "to protect individuals' privacy interests in personal and proprietary information." S.Rep. No. 99-541, at 3 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, at 3557.

57.     Section 2701(a)(2) of the SCA provides that it is unlawful to "intentionally exceed[] an authorization to access [a facility through which an electronic communication service is provided] and thereby obtain[], alter[], or prevent[] authorized access to a wire or electronic communication while it is in electronic storage in such system…."

58.     An "electronic communication service" under the SCA is "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15).

59.     An "electronic communication means any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce." 18 U.S.C. § 2510(12).

60.     An "electronic communications system" is further defined by the SCA as "any wire, radio, electromagnetic, photooptical or photoelectronic facilities for the transmission of wire or electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications." 18 U.S.C. § 2510(14).

61.     Palm Services is an "electronic communications system" as defined by the SCA because it uses wire, radio, electromagnetic, photooptical or photoelectronic facilities for the transmission of electronic communications.

62.     Likewise, Sprint's wireless network is an "electronic communications system" as defined by the SCA because it uses wire, radio, electromagnetic, photooptical or photoelectronic facilities for the transmission of electronic communications.

63.     Defendants are providers of electronic communication services because they provide their subscribers with the ability to send electronic communications, which are then stored on Palm's computer systems.

64.     By failing to take commercially reasonable steps to properly store, backup, and retrieve the data inputted to the Classes' webOS-based devices and/or deleting Class members' stored data without authorization to delete such data, Defendants intentionally exceeded authorized access to the facilities storing Class members' data in violation of 18 U.S.C. § 2701(a)(2).

65.     As a result of Defendants' conduct described herein and their violation of § 2701(a)(2), Plaintiff and the Classes have suffered injuries. Plaintiff, on his own behalf and on behalf of the Classes, seeks an order enjoining Defendants' conduct described herein and awarding himself and the Classes the maximum statutory damages available under 18 U.S.C. § 2707.

**SECOND CAUSE OF ACTION**

**Breach of Contract**

**(On behalf of Plaintiff and both Classes against all Defendants)**

66.     Plaintiff incorporates by reference the foregoing allegations.

67.     Plaintiff and members of both Classes entered into identical agreements with Defendants whereby Defendants represented they would "[b]ack up [Plaintiffs'] Contacts, Calendars, Memos, and Tasks along with preferences and any software downloaded from the App Catalog.  Back up runs automatically every day over the air—without interrupting you. Then retrieve the information if you get a new Palm webOS phone by signing into your Palm profile."

68.     Defendants expressly and/or impliedly agreed to carry out their obligations in good faith and fair dealing.

69.     Defendants breached their contractual obligations, including their obligations of good faith and fair dealing, by failing to back up the data as promised.

70.     Plaintiff and Class members have performed their obligations under the contracts.

71.     The aforementioned breaches of contract have caused Plaintiff and the Classes economic injury and other damages.

**THIRD CAUSE OF ACTION**

**Negligence**

**(On behalf of Plaintiff and both Classes against all Defendants)**

72.     Plaintiff incorporates by reference the foregoing allegations.

73.     Defendants owed a duty of care to Plaintiff and the members of the Classes.

74.     By virtue of their assumption of duties and responsibilities of providing mobile phone services to Plaintiff and the members of the Classes, including backup services for all data and information entrusted to Defendants by Plaintiff and the members of the Classes, Defendants owed to Plaintiff and the members of the Classes the duty to act in such a manner as a reasonably prudent person would under similar circumstances.

75.     Pursuant to the duties and responsibilities assumed by Defendants, Defendants were required to maintain backups of the personal data of Plaintiff and the members of the Classes, and ensure that such data would and could be properly entrusted to Defendants to maintain and retain, safely, securely and always available, no matter what might happen to the individual device the user utilized to access that data.

76.     Defendants breached their duty to Plaintiff and the other members of the Classes by failing to adequately ensure the safety, security and availability of the data belonging to Plaintiff and the Classes.  Specifically, Defendants negligently failed to invest

the resources, including hardware, software, procedures, maintenance, security, backup procedures, and the training and testing necessary to ensure that their data backup and restoration functions would operate to permit Plaintiff and the members of the Classes to access and secure the data they entrusted to Defendants.

77.     Had Defendants exercised reasonable care and skill in protecting the data of Plaintiff and the other members of the Classes, that data would not have been lost.

78.     Plaintiff and the other members of the Classes have suffered economic damage as a direct and proximate result of Defendants' failure to properly backup and secure the data entrusted to them by Plaintiff and the Classes.  The exact amount of loss is to be determined at the time of trial.

<h3 style="text-align:center">FOURTH CAUSE OF ACTION</h3>

**Violation of California Consumer Legal Remedies Act ("CLRA")**

**(On behalf of Plaintiff and both Classes against all Defendants)**

79.     Plaintiff incorporates by reference the foregoing allegations.

80.     The Consumer Legal Remedies Act ("CLRA") applies to Defendants' actions and conduct described herein because it extends to transactions that are intended to result, or which have resulted, in the sale of goods or services to consumers.

81.     Plaintiff and each member of the Classes are "consumers" within the meaning of Cal. Civ. Code § 1761(d).  This cause of action applies to any person that used their Palm webOS-based device, in whole or in part, for personal use.

82.     The webOS devices that Plaintiff and each member of the Classes own are "goods" within the meaning of Cal. Civ. Code § 1761(a).  The mobile services for which Palm webOS-based device owners pay a monthly fee are "services" within the meaning of Cal. Civ. Code § 1761(b).

83.     Defendants violated the CLRA in at least the following respects:

(a)     In violation of § 1770(a)(5), Defendants have represented that Palm

webOS-based devices have characteristics, uses, and benefits that they do not have; and,

    (b)    In violation of § 1770(a)(9), Defendants have advertised Palm webOS-based devices and related services with an intent not to sell them as advertised.

84.    Defendants concealed material facts regarding webOS devices from Plaintiff and other members of the Classes, including that they fail to perform in accordance with advertised performance specifications, including but not limited to the fact that the webOS devices utilize secure automatic data backup and restoration systems.  This type of information is relied upon by consumers in making purchase decisions, and is fundamental to the decisions to purchase a costly mobile phone with monthly fees for use and operation.

85.    One of the major selling points of webOS devices was that users always had access to their personal data, and that such data would and could be properly entrusted to Defendants to maintain and retain, safely, securely and always available, no matter what might happen to the individual device that owners utilized to access that data.  What Defendants did not disclose to Plaintiff and members of the Classes was that Defendants did not invest the resources, including hardware, software, procedures, maintenance, security, back up procedures, and the training and testing necessary to ensure that their data backup and restoration functions operated to achieve the guarantees and promises Defendants made to users of their products and services.  Defendants saved money by not investing these necessary resources to support the promises and guarantees made to users of their products and services.

86.    Had Defendants disclosed the true fact that Palm webOS-based devices did not utilize a secure automatic backup and restoration system for the data inputted to the devices, such information would have been made known to Plaintiff and the other members

of the Classes through the marketing and advertising presented by retailers, resellers, Defendants, the trade press and others.

87.     Had Defendants disclosed this material information regarding the webOS-based devices to Plaintiff and the other members of the Classes, they would not have purchased webOS devices, nor the monthly plans that supposedly promised those features prominently advertised and promoted by Defendants.

88.     Plaintiff and the other members of the Classes relied upon Defendants' misrepresentations to their detriment.

89.     Defendants' failure to disclose the webOS devices' inability to meet their advertised performance parameters, and Defendants' conscious concealment of a fatal flaw in the operation of those devices by which all copies of all users' data were maintained in unsecure and non-redundant servers, are omissions and concealments of material fact that constitute unfair, deceptive, and misleading business practices in violation of Cal. Civ. Code § 1770(a).

90.     Defendants' deceptive acts and omissions occurred in the course of selling consumers products and services and have occurred continuously through the filing of this Complaint.

91.     As a direct and proximate result of Defendants' violation of Cal. Civ. Code § 1770, *et seq.*, Plaintiff and the other members of the Classes have suffered irreparable harm.  Plaintiff, on behalf of himself and the Classes, seeks injunctive relief.

### FIFTH CAUSE OF ACTION

### Violation of Cal. Bus. & Prof. Code § 17200

### (On behalf of Plaintiff and both Classes against all Defendants)

92.     Plaintiff incorporates by reference the foregoing allegations.

93.     Cal. Bus. & Prof. Code § 17200 proscribes unfair business competition and defines this to include any unfair, unlawful, or fraudulent business practice or act.

94.     One of the major selling points of Palm webOS-based devices was that users always had access to their personal data, and that such data would and could be properly entrusted to Defendants to maintain and retain, safely, securely and always available, no matter what might happen to the individual device that owners utilized to access that data. What Defendants did not disclose to Plaintiff and the members of the Classes was that Defendants did not invest the resources, including hardware, software, procedures, maintenance, security, back up procedures, and the training and testing necessary to ensure that their data backup and restoration functions operated to achieve the guarantees and promises Defendants made to users of their products and services.  Defendants saved money by not investing these necessary resources to support their promises and guarantees made to users of their products and services.

95.     Defendants' acts and practices as alleged herein constitute unlawful, unfair, and/or fraudulent business practices in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et. seq.*

96.     Defendants engaged in unlawful business practices by, among other things:

(a)     engaging in conduct, as alleged herein, that violates California's Consumer Legal Remedies Act; and

(b)     engaging in conduct that undermines or violates the stated policies underlying California's Consumer Legal Remedies Act.

97.     Defendants engaged in unfair business practices by, among other things:

(a)     engaging in conduct where the utility of that conduct is outweighed by the gravity of the consequences to Plaintiff and the Classes;

(b)     engaging in conduct that is reckless, unconscionable, or substantially injurious to Plaintiff and the Classes;

(c)     engaging in conduct that undermines or violates the stated policies underlying California's Consumer Legal Remedies Act which seeks to

protect California consumers against advertising practices and to promote a basic level of honesty and reliability in the marketplace, and a level playing field, so that companies that do invest in the appropriate technology and services to comply with their promises and representations to users do not have to compete with those companies and businesses that make such promises but are not burdened with the costs of honest compliance.

98.    Defendant utilized fraudulent business practices by engaging in conduct that was and is likely to deceive consumers acting reasonably under the circumstances. Defendants' fraudulent business practices include but are not limited to:

(a)    failing to disclose that Defendants did not keep or retain any back up of users' personal data;

(b)    failing to disclose that there was a high risk of loss of users' personal data;

(c)    failing to disclose that Defendants had no back up plan or procedure if a failure should occur with the servers that retained and maintained users' data;

(d)    failing to disclose that Defendants did not invest the resources, including hardware, software, procedures, maintenance, security, back up procedures, and the training and testing necessary to ensure that their data backup and restoration functions operated to achieve the guarantees and promises Defendants made to users of their products and services; and,

(e)    failing to disclose that Defendants saved money by not investing these necessary resources to support the promises and guarantees they made to users of their products and services.

99.   As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent acts, business practices, and conduct, Plaintiff and the other members of the Classes have suffered injury in fact and lost valuable property (i.e. data) in that, among other things:

    (a)   Plaintiff and the Classes would not have entrusted Defendants to be the sole back up repository for their valuable personal and business data;

    (b)   Plaintiff and the Classes would not have purchased a mobile phone that did not have reliable data storage and retrieval capacity;

    (c)   Plaintiff and the Classes would not have entered into service agreements with companies that did not have reliable data storage and retrieval capacity;

    (d)   Plaintiff and the Classes would have sought or obtained other means to back up and protect their valuable and irreplaceable data and would not have tied themselves to a system that did not have this capacity; and,

    (e)   Plaintiff and the Classes lost personal, critical, business and/or other data that they entrusted to Defendants for safekeeping and access.

100.   Plaintiff, on behalf of himself and the Classes, seeks individual restitution, injunctive relief and other relief allowed under § 17200, *et seq*.

### SIXTH CAUSE OF ACTION

### Violation of Cal. Bus. & Prof. Code § 17500

### (On behalf of Plaintiff and both Classes against all Defendants)

101.   Plaintiff incorporates by reference the foregoing allegations.

102.   Defendants engaged in advertising and marketing to the public and offered for sale Palm webOS-based devices on a nationwide basis including in California.  Defendants

engaged in advertising to the public, including to Plaintiff and the other members of the Classes, offering for sale mobile phones that were represented to utilize a secure automatic data backup and restoration system.  Defendants engaged in such advertising with the intent to induce Plaintiff and the other members of the Classes to purchase webOS-based devices and enter into long-term service agreements for mobile phone services.

103.    On information and belief, Defendants' advertising is untrue or misleading and likely to deceive the public in that the advertising portrays a level of performance and reliability that the Palm webOS mobile phones did not have and could not deliver.

104.    In making and disseminating the statements herein alleged, Defendants knew, or by the exercise of reasonable care should have known, that the statements were false and misleading and are therefore in violation of Cal. Bus. & Prof. Code §§ 17500, *et seq.*

105.    Defendants' advertising, as herein alleged, constitutes unfair competition in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*

106.    As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent acts, business practices, and conduct, Plaintiff and the Classes have suffered injury in fact and lost valuable property (i.e. data) in that, among other things:

(a)    Plaintiff and the Classes would not have entrusted Defendants to be the sole back up repository for their valuable personal and business data;

(b)    Plaintiff and the Classes would not have purchased a mobile phone that did not have reliable data storage and retrieval capacity;

(c)    Plaintiff and the Classes would not have entered into service agreements with companies that did not have reliable data storage and retrieval capacity;

      (d)     Plaintiff and the Classes would have sought or obtained other means to backup and protect their valuable and irreplaceable data and would not have tied themselves to a system that did not have this capacity; and,

      (e)     Plaintiff and the Classes lost personal, critical, business and/or other data that they entrusted to Defendants for safekeeping and access.

107.   Unless restrained by the Court, Defendants will continue to engage in false and misleading advertising, as herein alleged, in violation of Cal. Bus. & Prof. Code §§ 17200 and 17500.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Classes, prays for the following relief:

    A.    Certify this case as a class action on behalf of the Classes defined above, appoint Plaintiff as class representative, and appoint his counsel as class counsel;

    B.    Declare that Defendants' actions, as set out above, constitute violations of the Stored Communications Act, 18 U.S.C. §§ 2701, *et seq.*, breach of contract, negligence, and violate the California Consumer Legal Remedies Act, the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, and Cal. Bus. & Prof. Code § 17500;

    C.    Award injunctive and equitable relief, including restitution in an amount to be determined at trial: (a) prohibiting Defendants from engaging in the acts of unfair competition and false advertising alleged herein; (b) requiring Defendants to disgorge all ill-gotten gains to Plaintiff and the Classes, or to whomever the Court deems appropriate; (c) awarding Plaintiff and the Classes full restitution of all monies

1    wrongfully acquired by Defendants by means of the wrongful conduct

2    alleged herein; and (d) ordering such funds or assets to be impounded,

3    or a trust imposed, to avoid dissipation, fraudulent transfers, and/or

4    concealment of such monies or assets by Defendants;

5    D.   Award Plaintiff and the Classes damages in an amount to be

6         determined at trial;

7    E.   Award Plaintiff and the Classes their reasonable litigation expenses

8         and attorneys' fees;

9    F.   Award Plaintiff and the Classes pre- and post-judgment interest, to the

10        extent allowable;

11   G.   Enter injunctive and/or declaratory relief as is necessary to protect the

12        interests of Plaintiff and the Classes; and

13   H.   Award such other and further relief as equity and justice may require.

14                               **JURY DEMAND**

15        Plaintiff demands a trial by jury of all claims that can be so tried.

16                                    Respectfully submitted,

17   Dated:  September 24, 2010        EDELSON MCGUIRE LLC

18

19                                    By:/s/ Benjamin H. Richman_____
20                                       One of the Attorneys for Plaintiff

21   DAVID C. PARISI                  JAY EDELSON
22   dcparisi@parisihavens.com        jedelson@edelson.com
     SUZANNE HAVENS BECKMAN           MICHAEL J. ASCHENBRENER
23   shavnes@parisihavens.com         maschenbrener@edelson.com
     PARISI & HAVENS, LLP             BENJAMIN H. RICHMAN
24   15233 Valleyheart Drive          brichman@edelson.com
25   Sherman Oaks, California 91403   EDELSON MCGUIRE, LLC
     Telephone: (818) 990-1299        350 North LaSalle Street, Suite 1300
26                                    Chicago, Illinois 60654
                                      Telephone: (312) 589-6370
27

28

FIRST AMENDED COMPLAINT                                  09-cv-05719-LHK

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I, Benjamin H. Richman, an attorney, certify that on September 24, 2010, I served the above and forgoing *First Amended Class Action Complaint*, by causing true and accurate copies of such paper to be filed and transmitted to all parties and their counsel of record via the Court's CM/ECF electronic filing system, on this the 24th day of September, 2010.

/s/ Benjamin H. Richman     