UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JASON STANDIFORD, an individual, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PALM, INC., a Delaware corporation, and SPRINT SPECTRUM L.P., a Delaware limited partnership, and DOES 1-50, inclusive,<br><br>Defendants. | Case No.: 09-CV-05719-LHK<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT |

Plaintiff moves the Court to grant preliminary approval of a proposed settlement in this putative consumer class action. Dkt. No. 55 ("Mot.").[1] Plaintiff also seeks conditional certification of his proposed class and appointment of Plaintiff and his counsel as class representatives. *Id.* On March 31, 2011, the Court held a hearing on the matter. After considering the relevant authorities, the parties' submissions, and the parties' arguments at the hearing, the Court hereby DENIES Plaintiff's motion without prejudice.

## I. BACKGROUND

This class action seeks recovery for Defendants Palm, Inc. and Sprint Spectrum L.P.'s alleged false and misleading statements regarding the Palm WebOS mobile phone platform's ability to store and back up user data. Dkt. No. 41 ("FAC"). The proposed class also seeks

---

[1] Defendants joined in Plaintiff's motion for preliminary approval. Dkt. No. 57.

1

recovery for the loss of personal data suffered by users of certain Palm WebOS based wireless phone devices. *Id.*

### A. Factual Background

Plaintiff's First Amended Class Action Complaint ("FAC") alleges the following:[2]

#### 1. General Allegations

Palm is a Delaware corporation headquartered in California. *Id.* ¶ 7. It provides mobile computing and communication technologies and sells a broad range of products, including smartphones and handheld computers. *Id.* Sprint Spectrum is a Delaware limited partnership and a leading provider of cellular phone and data service in the United States. *Id.* ¶ 8. In June of 2006, Palm began selling mobile devices designed for use with Palm's WebOS operating system. *Id.* ¶ 2. These WebOS devices differed from other mobile devices for two principal reasons. First, WebOS devices, unlike other mobile devices, rely heavily on synchronization with contacts, calendars and other information that users store online using various internet services. *Id.* ¶ 3. Second, users of WebOS devices back up data stored on their phones on Palm's servers rather than on their own personal computers. *Id.* Palm calls this function "Palm Services." *Id.* ¶ 17. Palm designed WebOS devices to back up virtually all data stored on a device to Palm's servers every 24 hours. *Id.* ¶ 3. Without purchasing third-party software, users of these devices cannot back up their devices on their own personal computers. *Id.* ¶¶ 4, 29. Thus, all back up information is stored on Palm's own servers through the use of Palm Services. *See id.*

When users of WebOS phones activate their phones for the first time, Palm requires them to create a "Palm Profile." *Id.* ¶ 18. This account is user, not device, specific. *Id.* Palm designed these accounts to allow users to access their device settings and data from any WebOS based device. *Id.* In this way, WebOS device users can restore any data they lose to any WebOS based mobile phone. *Id.* ¶ 3. This is, of course, assuming the data was properly backed up on Palm's servers, which is meant to occur every 24 hours. *Id.* It is when users create their Palm Profile accounts that Palm's back up service begins to operate. *Id.* ¶ 23. Once a back up is completed, all

---

[2] Defendants have denied and continue to deny any wrongdoing. Mot. 3.

2

Case No.: 09-CV-05719-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT

information from previous back-ups is erased. *Id.* ¶ 25. Palm does not keep a secondary back up of a user's data. *Id.* ¶ 26.

During its first week on the market, Palm sold between 50,000 and 100,000 units of the Palm Pre, Palm's first WebOS device. *Id.* ¶¶ 14-15. To date, Palm has sold several hundreds of thousands more units of the Palm Pre. *Id.* Initially, Sprint possessed the exclusive right to provide cellular phone service in the United States for the Palm Pre and the WebOS based Palm Pixi, the Palm Pre's sister device. *Id.* ¶ 16. Users of the Palm Pre can now purchase service through carriers other than Sprint. *Id.*

### 2. Facts Related to Plaintiff

Jason Standiford, the named Plaintiff, purchased and used a Palm Pre device. *Id.* ¶ 31. In November of 2009, Standiford went to his local Sprint store to complete a warranty exchange for his Palm Pre. *Id.* ¶ 32. At the store, Standiford exchanged his malfunctioning Palm Pre for a new or refurbished Palm Pre. *Id.* ¶ 33. When Standiford logged onto his Palm Profile to load his data onto his new phone, Standiford discovered that his Palm Profile only contained four out of the hundreds of contacts that he had stored on his previous Palm Pre. *Id.* ¶¶ 34-35. Standiford returned to the Sprint store in the hopes of retrieving his data from his old phone. *Id.* ¶ 36. A Sprint representative attempted to transfer the data from Standiford's old phone to his new phone but deleted all of the data stored on his old device in the process. *Id.* ¶ 38.

In purchasing his Palm Pre, Standiford specifically relied on Palm and Sprint's representations that the Palm system would back up his data and that he could restore his data to any WebOS based mobile device. *Id.* ¶ 40.

### 3. Class Allegations

In the FAC, Plaintiff proposes one class and one subclass. First, Plaintiff defines the "WebOS Class," which consists of all persons and entities in the United States who (1) created Palm Profiles for use with Palm Services and their Palm WebOS based mobile phones and (2) stored data on Palm's servers via Palm Services. *Id.* ¶ 41. Second, Plaintiff defines the "WebOS Data Loss Subclass," which consists of all persons and entities in the United States who (1) created

3

Palm Profiles for use with Palm Services and their Palm WebOS based mobile phones, (2) stored data on Palm's servers via Palm Services, and (3) suffered permanent data loss. *Id.*[3]

Plaintiff alleges that this class and subclass consist of thousands of individuals and entities, that Plaintiff's claims are typical of the claims of all other members of the classes, that Plaintiff will fairly and adequately represent and protect the interests of the other members of the classes, and that there are many questions of law and fact common to Plaintiff's claims and the claims of the other members of the classes. *Id.* ¶¶ 43-45, 49-53. Plaintiff also claims that absent a class action, most members of the classes would not litigate their claims because the potential remedies would not justify the cost of litigation. *Id.* ¶ 46.

### 4. Causes of Action

Based on his allegations, Plaintiff brings six causes of action: (1) Violation of the Stored Communications Act, 18 U.S.C. § 2702; (2) Breach of contract; (3) Negligence; (4) Violation of California Consumer Legal Remedies Act; (5) Violation of California Business and Professions Code § 17200; and (6) Violation of California Business and Professions Code § 17500. In his prayer for relief, Plaintiff seeks an award of injunctive and equitable relief, damages, and reasonable litigation expenses and attorneys' fees.

### B. Procedural History

Plaintiff filed his original putative class action complaint on December 4, 2009. Dkt. No. 1. This complaint named Palm and Sprint Nextel, Corp. as defendants and asserted all but one of the claims contained in the FAC.[4] Pursuant to stipulation and Court Order, the parties dismissed Sprint Nextel and substituted Sprint Spectrum into the case. Dkt. No. 21. Palm and Sprint Spectrum answered Plaintiff's original complaint on February 12, 2010. Dkt. No. 19.

On June 2, 2010, the parties met in person for a mediation with the Honorable Ronald Sabraw (Retired) of JAMS. Mot. 2. Under his direction, the parties engaged in settlement

---

[3] Excluded from the class definitions are Defendants, their legal representatives, assigns, and successors, and any entity in which Defendants have a controlling interest. Also excluded are any judges to whom this case is assigned and those judges' immediate families. FAC ¶ 41.
[4] The original complaint did not have a Stored Communications Act claim.

negotiations but were unable to reach an agreement. *Id.* After the mediation session, the parties continued to negotiate with the assistance of Judge Sabraw but did not reach agreement.

This case was reassigned to the undersigned Judge on August 2, 2010. Pursuant to stipulation, Dkt. No. 40, Plaintiff filed his FAC on September 24, 2010, Dkt. No. 41. On October 26, 2010, the parties again met with Judge Sabraw for a second mediation. Mot. 2. After two full days of mediation, the parties signed a detailed memorandum of understanding. *Id.* On January 13 and 14, 2011, the parties signed the Settlement Agreement now before the Court. Mot., Ex. 1 ("Agreement").

At the hearing on the instant motion, Plaintiff's counsel represented that no formal discovery has taken place in this case. Neither side has taken any depositions. Neither side has served interrogatories, requests for production of documents, or requests for admission. However, Plaintiff's counsel represented that some informal discovery had taken place.

### C. Proposed Settlement

The Settlement Agreement provides for both monetary and non-monetary relief. Unlike the FAC, which included two classes, the Settlement Agreement contemplates only a single class (the "Settlement Class") defined as: All Persons and entities in the United States who (1) created Palm Profiles for use with Palm Services and their Palm WebOS based mobile phones, and (2) stored data on Palm's servers via their Palm WebOS based mobile phones.[5] The Settlement Agreement provides non-monetary benefits to all Settlement Class Members. The Settlement Agreement provides monetary benefits only to eligible Settlement Class Members.

#### 1. Non-Monetary Relief

The Settlement Agreement contemplates two forms of non-monetary relief. First, Defendants agree that, not later than ten (10) days after the case is dismissed with prejudice, Palm will provide and file with the Court a declaration under penalty of perjury describing the nature of the data access issue or issues giving rise to the allegations in Plaintiff's Complaint, outlining steps

---

[5] Excluded from the Class are Defendants, their legal representatives, assigns, and successors, and any entity in which Defendants have a controlling interest. Also excluded are any judges to whom this case is or has been assigned and those judges' immediate families.

5
Case No.: 09-CV-05719-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT

1   taken to address those issues, and stating that to the best of Defendants' knowledge, the issues have

2   been resolved.  Agreement 13.

3         Second, Defendants agree to provide a dedicated email address for Settlement Class

4   Members to use to contact Defendant Palm with any WebOS technical issues relating to this

5   Settlement or this case, for twelve (12) months after the dismissal of this case.  The Settlement

6   Administrator[6] shall list the email address on the home page of the settlement website not later than

7   ten (10) days after the case is dismissed.  *Id.*

### 2. Monetary Relief

Defendants have agreed to provide a $640,000 Settlement Fund to pay all settlement administration expenses, taxes on earnings of the Settlement Fund, claims made by eligible Settlement Class Members, the incentive award to Plaintiff, and the attorneys' fees.  *Id.* at 9.  The Settlement Fund represents the limit and total extent of Defendants' monetary obligation.  *Id.*  Any monies remaining in the Settlement Fund after all other expenses will be paid to one or more *cy pres* recipients to be agreed upon jointly by the parties.  *Id.* at 13.

The Settlement Agreement provides payment from the Settlement Fund to two categories of Settlement Class Members.  First, each Settlement Class Member who experienced Permanent Data Inaccessibility[7] and who has his or her claim approved by the Settlement Administrator will receive either: (1) an HP Official (online) Store redemption code worth $30, which may be redeemed in a single transaction and is fully transferrable or (2) a Sprint bill credit in the amount of $30.  *Id.* at 11.[8]  Second, each Settlement Class Member who experienced Temporary Data Inaccessibility[9] and who has his or her claim approved by the Settlement Administrator shall

---

[6] Garden City Group is the Settlement Administrator.
[7] Permanent Data Inaccessibility is defined as: User-created information stored on Palm's servers, in connection with the use of Palm Services and a Palm WebOS-based mobile device that at some point became inaccessible to the user and did not become accessible again.  For example, one address book entry.  Agreement 7.
[8] The Settlement Agreement actually contemplates a third option: a Palm online store redemption code worth $30.  Because Hewlett-Packard acquired Palm during the pendency of this litigation, the HP online store now carries Palm products.  This makes it unnecessary to offer a Palm online store redemption code as an option.  Dkt. No. 63.  This also applies to the Settlement Class Members who experienced Temporary Data Inaccessibility.
[9] Temporary Data Inaccessibility is defined as: User-created information stored on Palm's servers, in connection with the use of Palm Services and a Palm WebOS-based mobile device that at some

6
Case No.: 09-CV-05719-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT

receive either: (1) an HP Official (online) Store redemption code worth $20, which may be redeemed in a single transaction and is fully transferrable or (2) a Sprint bill credit in the amount of $20. *Id.*

This relief is subject to a number of limitations. *Id.* at 12-13.  One of these limitations is that redemption codes must be used within 180 days of issuance.  Furthermore, no more than one redemption code may be used in a single transaction, and no change will be given when a redemption code is used.

### 3. Release of Claims

The Settlement Agreement contemplates that the obligations incurred pursuant to the Settlement Agreement shall be a full and final disposition of this case and any and all Released Claims. *Id.* at 14.  Specifically, Section 1.27 of the Agreement defines "Released Claims" to mean any and all claims, liens, demands, actions, causes of action, obligations, damages or liabilities of any nature whatsoever (including "Unknown Claims" as defined in section 1.37), whether legal or equitable or otherwise, that were, or could have been, asserted in this case based upon the facts alleged in this case, based upon any violation of any state or federal statutory or common law or regulation, and any claim arising directly or indirectly out of, or in any way relating to, the claims that were, or could have been, asserted in the Action arising out of or relating to (a) Palm's and/or Sprint's public statements concerning Palm's back-up and restore capabilities with respect to WebOS devices, as well as any Temporary or Permanent Data Inaccessibility, or (b) the facts alleged in this case.  Once the case is dismissed, Plaintiff, and the Settlement Class Members, shall be deemed to have fully, finally, and forever released, relinquished and discharged the Defendants from all "Released Claims."

### 4. Attorneys' Fees and Incentive Award

Subject to the Court's approval, Defendants have agreed not to oppose directly or indirectly, an attorneys' fee award of up to $213,000. *Id.* at 20.  The Court may award less than $213,000 in attorneys' fees and expenses to the Settlement Class' counsel without any further

---

point became inaccessible to the user, but at a later point became accessible. For example, one address book entry. Agreement 9.

7

Case No.: 09-CV-05719-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT

action or agreement by the parties and without any impact on the remainder of the Settlement Agreement. *Id.*

Under the Settlement Agreement, Jason Standiford, as the Settlement Class representative, is to be awarded an incentive award of $1,500. *Id.* at 21.

### 5. Notice to Class Members

The Settlement Agreement provides for three methods of notice. *Id.* at 14-17.

<u>Notice by Electronic Mail:</u> Within ten (10) days after the Court preliminarily approves the settlement, Palm will provide to the Settlement Administrator the email addresses that it has for potential Settlement Class Members. The Settlement Administrator will then send notice[10] of the Settlement Agreement to each email address. Costs of obtaining email addresses will be deducted from the Settlement Fund.

<u>Notice by Publication:</u> Not later than thirty (30) days after the Court preliminarily approves the settlement, the Settlement Administrator will have a 1/8 page notice[11] of the settlement published in USA Today and PC World.

<u>Internet Publication Notice:</u> Within twenty (20) days following the Court's preliminary approval of the settlement, Defendants shall provide notice[12] of the settlement on a website. The Settlement Administrator will run the website. The website will also allow qualifying visitors to file their claim for monetary relief under the Settlement Agreement.

Under the Settlement Agreement, the costs required to issue these notices will be paid from the Settlement Fund.

---

[10] Plaintiff provided the Court with the proposed form of Notice by Electronic Mail in connection with its motion for preliminary approval. Mot., Ex. B1. At the hearing, the Court expressed concern with the confusing nature of the Notice. As a result, Plaintiff filed a revised version. Dkt. No. 63-2.

[11] Plaintiff provided the Court with the proposed form of Notice by Publication in connection with its motion for preliminary approval. Mot., Ex. B2. Plaintiff filed a revised version of his Notice by Publication after the March 31, 2011 hearing. Dkt. No. 63-3.

[12] Plaintiff provided the Court with the proposed form of Internet Publication Notice in connection with its motion for preliminary approval. Mot., Ex. B3. Plaintiff filed a revised version of his Internet Publication Notice after the March 31, 2011 hearing. Dkt. No. 63-4.

### 6. Opting Out

According to the revised notices, Settlement Class Members may object to the terms of the settlement by writing to the Court. Dkt. No. 63-2. Under the Settlement Agreement, any member of the Settlement Class may opt out of the Settlement Class within sixty (60) days after notice of the settlement is first disseminated. Agreement 16. Unless a Class Member objects to the settlement, no Class Member will be permitted to object to the Settlement Agreement at the final approval hearing or seek any review of the Settlement Agreement. If more than 300 of the prospective Settlement Class Members opt out, Defendants may elect to terminate the Settlement Agreement. *Id.* at 17.

## II.  LEGAL STANDARDS

"The claims . . . of a certified class may be settled . . . only with the court's approval." FED. R. CIV. P. 23(e). "Procedurally, the approval of a class action settlement takes place in two stages." *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 473 (E.D. Cal. 2010). "In the first stage of the approval process, the court preliminarily approves the Settlement pending a fairness hearing, temporarily certifies the Class, and authorizes notice to be given to the Class." *Id.* (citations, quotations, and alterations omitted); *see Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ("Approval under 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted.") (citation omitted).

"[P]reliminary approval of a settlement has both a procedural and a substantive component." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). As for the procedural component, the court should analyze whether "the procedure for reaching [the] settlement was fair and reasonable" and whether "the settlement was the product of arms-length negotiations." *Id.* (finding the procedure fair and reasonable because "experienced counsel on both sides, each with a comprehensive understanding of the strengths and weaknesses of each party's respective claims and defenses, negotiated [the] settlement over an extended period of time"). As for the substantive component, the court analyzes the fairness and adequacy of the settlement. *Id.*

1    "To evaluate adequacy, courts primarily consider plaintiffs' expected recovery balanced against the

2    value of the settlement offer." *Id.* (citation omitted).  In doing so, the court may also consider the

3    "risk and the anticipated expense and complexity of further litigation." *Id.*

### III. ANALYSIS

At the March 31, 2011 hearing on Plaintiff's motion, the Court expressed concern with the class definition proposed by the parties, the relief afforded class members who did not experience data inaccessibility, and the proposed settlement notices.  Although the parties promptly filed a helpful supplemental brief and a set of improved settlement notice forms, the Court finds that the Settlement Agreement does not warrant preliminary approval and that the proposed class, as defined in Plaintiff's motion, should not be conditionally certified.  Because the deficiencies in the Settlement Agreement can be remedied, the Court's denial is without prejudice.  For the benefit of the parties, the Court will outline and discuss its concerns with the proposed class and Settlement Agreement.

#### A. Proposed Class

As stated above, the Settlement Class is defined as: All Persons and entities in the United States who (1) created Palm Profiles for use with Palm Services and their Palm WebOS based mobile phones, and (2) stored data on Palm's servers via their Palm WebOS based mobile phones.  Plaintiff argues that the Settlement Class meets the requirements of Federal Rule of Civil Procedure 23 and should be conditionally certified.  Mot. 6-9.

##### 1. Rule 23

"A class action will be certified only if it meets the four prerequisites identified in Federal Rule of Civil Procedure 23(a) and additionally fits within one of the three subdivisions of Rule 23(b)." *Murillo*, 266 F.R.D. at 473-74.  Rule 23(a) presents four requirements: (1) the class must be "so numerous that joinder of all members is impracticable;" (2) "there are questions of law or fact common to the class;" (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class;" and (4) "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(1)-(4).  Under Rule 23(b)(3), a class action can be maintained under Rule 23(a) if "the court finds that the questions of law or fact common to

10

1  class members predominate over any questions affecting only individual members, and that a class
2  action is superior to other available methods for fairly and efficiently adjudicating the
3  controversy." FED. R. CIV. P. 23(b)(3).

4  The Court finds that the Settlement Class does satisfy the numerosity requirement of Rule
5  23(a). The Settlement Class, however, is deficient with respect to commonality, typicality, and
6  adequacy.

### 2. Numerosity

In order to show that the class is so numerous that joinder of all members is impracticable, "plaintiffs need not state the 'exact' number of potential class members, nor is there a specific number that is required." *Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 548 (N.D. Cal. 2007) (citing *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 350-51 (N.D. Cal. 2005)). "The numerosity requirement ensures that the class action device is used only where it would be inequitable and impracticable to require every member of the class to be joined individually." *Id.* (citation omitted). "[C]ourts generally find that the numerosity factor is satisfied if the class comprises 40 or more members . . . ." *Id.* (citation omitted).

Here, Plaintiff and Defendants estimate that the Settlement Class of all persons and entities who created Palm Profiles and stored data on Palm's servers via Palm Services exceeds 2 million persons. Mot. 7. Of that number, those who allegedly lost data temporarily or permanently number between 5,000 and 10,000 persons, which is 0.5% of the total Settlement Class size. Either size is sufficient to satisfy Rule 23(a)(1).

### 3. Commonality

"Commonality exists where class members' 'situations share a common issue of law or fact, and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief.'" *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (quoting *Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990)). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)) (quotation marks omitted).

Here, the total Settlement Class consists of two groups: those class members who lost access to data stored on their WebOS devices, and those class members who did not lose access to data stored on their WebOS devices. The Settlement Class would lump these two divergent groups together, although Plaintiff's FAC itself distinguishes the groups into separate subclasses. *See* FAC ¶ 41. Both these groups together—i.e., all persons who ever purchased and used Palm's WebOS devices—presently number over 2 million persons. Of the over 2 million persons in the Settlement Class, those who lost data number between 5,000 and 10,000 persons. This means that they constitute a miniscule 0.5% of the total Settlement Class. Based on the representations of the parties (without any formal discovery), members of this small group of the Settlement Class can seek damages pursuant to federal law. In contrast, those customers who did not lose access to their data may only seek injunctive relief and restitution pursuant to California state law. Thus, those who lost data have a different cause of action and a different form of relief than members of the broader Settlement Class. According to the parties' own representations, different members of the Settlement Class do not share legal or factual issues and do not share legal remedies. Thus, the Court cannot find that the Settlement Class satisfies the commonality requirement of Rule 23.

### 4. Typicality

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Wolin*, 617 F.3d at 1175 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)) (quotation marks omitted). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (quotation and quotation marks omitted).

Standiford, the named Plaintiff and presumptive class representative, alleges in the FAC that he permanently lost access to a significant amount of data. Standiford's membership in the 0.5% subclass of people who actually lost data means that his injury differs from the injury of the other 99.5% of the over 2 million Settlement Class Members. Moreover, Standiford, unlike most members of the Settlement Class, can seek damages. Plaintiff's supplemental brief suggests that, in contrast, the majority of the Settlement Class can only pursue UCL injunctive relief: "protecting

12

1    the general public against unscrupulous business practices," *Steroid Hormone Prod. Cases*, 181

2    Cal. App. 4th 145, 154, 104 Cal. Rptr. 3d 329, 336 (2010) (quotation and quotation marks omitted).

3    *See* Dkt. No. 62 ("Supp. Br."), at 1-2. As a result, Standiford's interests likely focus on recovering

4    the maximum amount of damages possible and are not typical and aligned with the interests of the

5    other 99.5% of the Settlement Class.

6         Because Standiford is seeking a different type of relief than 99.5% of the Settlement Class

7    and is doing so pursuant to a cause of action apparently not available to 99.5% of the Settlement

8    Class, Standiford's claims are not typical of the Settlement Class. This also makes him inadequate

9    to represent the interests of all members of the Settlement Class as explained below.[13]

10   **5. Adequacy**

11   "The Ninth Circuit has recognized two criteria for determining adequacy: (1) whether

12   plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation,

13   and (2) whether the plaintiffs have interests antagonistic to those of the class." *Abels v. JBC Legal*

14   *Group, P.C.*, 227 F.R.D. 541, 545 (N.D. Cal. 2005) (citing *Lerwill v. Inflight Motion Pictures, Inc.*,

15   582 F.2d 507, 512 (9th Cir. 1978)). "Confronted with a request for settlement-only class

16   certification," district courts must give "undiluted, even heightened, attention" to those

17   requirements of Rule 23 "designed to protect absentees by blocking unwarranted or overbroad

18   class definitions." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). As the Ninth

19   Circuit has noted, "[i]ncentives inhere in class-action settlement negotiations that can, unless

20   checked through careful district court review of the resulting settlement, result in a decree in which

21   the rights of class members . . . may not be given due regard by the negotiating parties." *Staton v.*

22   *Boeing Co.*, 327 F.3d at 959. When parties seek to certify a settlement class that extinguishes the

23   claims of absent class members, the court must be especially careful to ensure that absent class

---

[13] Michael Aschenbrener, Benjamin Richman, and Christopher Dore of Edelson McGuire, LLC currently serve as Plaintiff's counsel and seek to be appointed as Class Counsel. "[A] court that certifies a class must appoint class counsel. In appointing class counsel, the court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." FED. R. CIV. P. 23(g)(1)(A)(i)-(iv). Because the Court finds that Standiford is not adequate to represent the interests of the proposed Settlement Class, it need not appoint Class Counsel at this time.

1  members will be treated fairly. *See Kakani v. Oracle Corp.*, 2007 U.S. Dist. LEXIS 47515, *4-6
2  (N.D. Cal. June 19, 2007).

3  The Court is reluctant to delay a negotiated resolution of this action. However, with all due
4  respect, the parties who negotiated this proposed settlement do not fully represent the interests of
5  all Settlement Class Members, including the 99.5% of the Settlement Class Members who are
6  absent, but would have to release "any claim arising directly or indirectly out of, or in any way
7  relating to, the claims that were, or could have been, asserted in the Action." *See* Section 1.27 of
8  Agreement. "While always giving deference to counsel's views of the advisability of a settlement,
9  a district court may not simply rubber stamp stipulated settlements. We must be careful to make
10 sure absent class members will be treated fairly." *See Kakani*, 2007 U.S. Dist. LEXIS 47515, * 3-
11 4. With no formal discovery, the parties, and the Court, would simply be guessing about the nature
12 and extent of the claims of absent Settlement Class Members whose claims would be extinguished
13 by this settlement. Such a resolution on the limited record before the Court does not appear fair.

14 In sum, the Settlement Class does not satisfy the requirements of Rule 23, and the Court
15 cannot certify the Settlement Class as currently defined. The Court notes that the parties would
16 have a much stronger case for certification if the proposed class consisted only of the more clearly
17 identified individuals who actually lost access to data, permanently or temporarily, stored on their
18 WebOS based mobile phones.

19 **B. Proposed Settlement Agreement**

20 The Court is amenable to approving the Settlement Agreement as it applies to those
21 individuals who actually lost access to data.[14] The compensation offered to those who lost their
22 data appears reasonable considering the strength of their claims and the risks of continued
23 litigation. However, the Settlement Class should be limited in time to prevent unnecessary
24 litigation to define the Class. For example, the Settlement Class may include a "covered period" of
25 a date certain and the date by which a preliminary approval Order is entered by the Court.

---

[14] The Court will independently evaluate any request for attorneys' fees if and when such a request is made, and will require Plaintiff's counsel to submit a declaration and billing records in order to calculate a lodestar as a cross-check of the reasonableness of the attorney's fees request. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (calculation of lodestar is useful in determining reasonableness of attorney's fee award).

United States District Court
For the Northern District of California

1     For reasons similar to those explained above, the Court does not find that the terms of the Settlement Agreement are fair and adequate as applied to those members of the Settlement Class who did not lose data.  In exchange for releasing any and all of their potential claims, the 99.5% of the Settlement Class who did not lose data can only ever receive two forms of relief.  First, they can receive access to a dedicated email address to receive assistance with WebOS technical issues relating to the lawsuit.  Second, they can receive a sworn written statement from Palm that the issues giving rise to this lawsuit have been resolved.  Neither form of relief is sufficient to justify release of "any and all" potential claims of absent Settlement Class Members that did not lose data.  *See Staton*, 327 F.3d at 959-60 (a district court's review of class action settlements includes "substantive consideration of whether the terms of the decree are "fair, reasonable and adequate to all concerned."").

Plaintiff argues that the relief offered to those Settlement Class Members who did not lose data is justified because those class members are not eligible for damages.  However, no formal discovery has taken place.  This makes it difficult for the Court to evaluate what claims the full Settlement Class may have.  In exchange for a broad release of any potential claims that they may have against Defendants, these Settlement Class Members would only get an e-mail address and a self-serving statement by Defendants that they think the problem giving rise to this litigation has been resolved.  As for the dedicated email address, the parties have not shown that this service will provide any benefit that is not currently available to all owners of Palm's WebOS devices.  In contrast to this limited relief, Defendants receive a disproportionately broad release of any and all of the Settlement Class Members' claims, known or unknown, "that were, or could have been, asserted in this case based upon the facts alleged in this case, based upon any violation of any state or federal statutory or common law or regulation."  Settlement Class Members would also release, under the Settlement Agreement, "any claim arising directly or indirectly out of, or in any way relating to, the claims that were, or could have been, asserted in [this case]."  Moreover, these release provisions would unfairly extinguish claims of those Settlement Class Members who do not even receive notice of the settlement.  *See Kakani*, 2007 U.S. Dist. LEXIS 47515, *13-17 (denying

approval of proposed class action settlement where agreement would erase any and all claims of absent class members, even those members that did not receive notice).

Because the proposed Settlement Class is overly broad and because 99.5% of the members of the Settlement Class are releasing all known and unknown claims for essentially no relief, the Court declines to preliminarily approve the Settlement Agreement.  Nevertheless, the Court is amenable to approving a narrower Settlement Agreement, limited in time, and consisting solely of those approximately 5,000-10,000 individuals who either temporarily or permanently lost access to their data.

## IV.  CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion without prejudice.  Any future motion should fully address the Court's concerns outlined in this Order.

**IT IS SO ORDERED.**

Dated: May 20, 2011

_____
LUCY H. KOH
United States District Judge